# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LARRY CALDWELL, AARON NIBLET, JORDAN EVANS, RYAN BELL, WILLIAM MASSEY, WILLIAM SHARP, EARL BULLOCK, DAVID SMITH, and BETTY JOSHUA | ) ) ) ) ) ) | Case No.: 3:23-cv-01315-E |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UPS CARTAGE SERVICES, INC., | ) ) | |
| Defendant. | ) | |

---

**MEMORANDUM IN SUPPORT OF UPS CARTAGE SERVICES, INC.'S EXPEDITED MOTION TO ENFORCE PROTECTIVE ORDER, TO COMPEL ADDITIONAL TESTIMONY OF PLAINTIFF NIBLET, AND FOR RELIEF UNDER RULE 37**

UPS respectfully requests that the Court enforce its November 19, 2024 Protective Order. Despite this Court's clear directives, (*see* Dkt. 83), in the two depositions completed since the Order, counsel made objections not supported by law and directly prohibited by the Court, coached witnesses, and directed their clients not to answer questions on relevance grounds, among other things. In addition, one Plaintiff brought notes to use to testify.

Accordingly, pursuant to Fed. R. Civ. P. 37(a)(3)(B)(i) and 37(b), UPS asks the Court to (a) enforce its November 19, 2024 Order (Dkt. 83), including by requiring that each Plaintiff and Plaintiffs' counsel appear before the Court and certify they have read it, understand it, and will comply with it, (b) compel Plaintiff Niblet to answer UPS's appropriate deposition questions that his lawyer instructed him not to answer, and (c) enter appropriate relief under Fed. R. Civ. P. 37.

## NATURE AND STATE OF THE PROCEEDING

In the fall of 2024, UPS deposed three of the nine Plaintiffs in this matter, which alleges race-based claims under 29 U.S.C. § 1981 as well as, for Plaintiff Niblet, Family Medical Leave Act and workers' compensation allegations. Discovery in this case is ongoing, slated to close on April 7, 2025.

After the first two depositions, UPS sought relief from the Court based on Plaintiffs' counsel's conduct. The Court concluded that Plaintiffs' counsel had engaged in "improper behavior during these depositions—including improper coaching of Plaintiffs during deposition." (Dkt. 83 at p. 7.) Accordingly, the Court ordered, among other things, that:

- "**Plaintiffs shall not rely on their notes prepared for testimony during deposition(s)**." (*Id.* at p. 2.) (emphasis in original).

- "In the remaining depositions in this case, all counsel shall be limited to objections . . . 'Objection, leading' and 'Objection, form.'

Objections to testimony during the oral deposition are limited to 'Objection, nonresponsive.' All other objections need not be made or recorded during the oral deposition to be later raised with the applicable court according to its rules." (*Id.*)

- "Unless permitted by Federal Rule of Civil Procedure 30(c)(2) a party may not instruct a deponent not to answer a question." *(Id.*)

The Court further "warn[ed] Plaintiffs' counsel's that any future failure to strictly comport with" the Court's orders and rules, shall result in a show cause order and potential sanctions. (*Id.*)

## FACTS

On February 12, 2025, UPS began Plaintiff Aaron Niblet's deposition. Prior to the deposition starting, Mr. Niblet stated he brought notes[1] to the deposition that he intended to use to testify. After discussion off the record, counsel directed Mr. Niblet to set his notes aside, and he complied. During the deposition, Mr. Niblet indicated he could not accurately testify without his notes that he brought for that purpose. (Ex. A (Niblet Deposition Transcript); Tr. 8:23-9:1; 12:17-19) (App. 4-5); *see also* Tr. 9:19-23 (App. 4) ("I understand that there was – y'all went to – the plaintiff – the defense went to the Court to tell us that we couldn't use any of our

---

[1] Despite not producing them until the morning of his deposition, Mr. Niblet claimed he created the notes prior to contacting an attorney. (Tr. 297:1-14 (App. 76).)

notes so we could be accurate in our statements."), Tr. 286:21-24 (App. 74) (Q: "Why did you bring those documents with you today?" A: "**I thought I would be able to use them as notes.**" (emphasis added).)

Counsel also made speaking objections:

> Q:     Okay.  And you came today prepared to talk about your claims against UPS?
>
> A.   Yes, ma'am, --
>
> MR. SANFORD:  Objection, form.
>
> …
>
> BY MS. SIMONET: Is there any reason you think you can't do that today?
>
> A.   No.
>
> Q.   And you're prepared to give accurate and truthful testimony –
>
> A.   As best as I can.
>
> MR. SANFORD: Objection, form.
>
> …
>
> **I'm going to state that I'm objecting to the manner of taking the deposition that Counsel has asked the same question at least three times.**

(Niblet Tr. 11:4-12:2 (App. 5) (emphasis added).)  Counsel went on to object that a question was "abusive:"

> Q: I going to assume that you understand all questions I ask you today unless you ask for clarification.  Does that make sense?

>MR. SANFORD:  Objection, form.  That - **I would say
>that that's an abusive question.**

(Niblet Tr. 14:14-18 (App. 6) (emphasis added); *see also* Tr. 19:18-20:3 (App. 7)

("MS. SIMONET: The Court has limited your objections to form objections, the

form of the question … MR. SANFORD: … **I don't interpret the order that way.**"

(emphasis added).) UPS's counsel reminded Plaintiffs' counsel of this Court's order,

after which Plaintiffs' counsel directed Plaintiff Niblet not to answer the question:

>MR. SANFORD:  I instruct you not to answer that
>question under Rule 30(c)(2).
>
>MS. SIMONET: Not to answer whether -- I can assume
>he understands my questions.
>
>MR. SANFORD: Right.

(Tr. 21:23-22:11 (App. 7).)  When UPS asked for the grounds, Plaintiffs' counsel

engaged in a lengthy speaking objection, coaching the witness:

>MR. SANFORD:  **Because it's not fair.**  You can't
>because your – he – it assumes he may know something
>he doesn't know.  It happens all the time.  It's fair if he
>didn't truly understand the question but what about the
>circumstances where he doesn't know that he doesn't
>understand the question, doesn't realize that he doesn't
>understand the question until later in context looking it
>over?
>
>It happens to all of us all the time. Wake up in the middle
>of the night.  Oh, she was talking about oranges.  I
>thought she was talking about apples.  I now -- I now
>know what she was saying, but at the time, I didn't, and I
>couldn't have made – I couldn't have said, oh, yes, I
>understand the question.

> There are exceptions to that, and so it's not all-encompassing, and it's not fair.  **It's a trick question.**

(*Id.* at 22:13-23:12. (App. 8) (emphasis added).)  Following a break, counsel later withdrew the objection, the witness answered, and the deposition proceeded.  (Tr. 23:18-24:4 (App. 8).)

Later, when UPS sought to clarify Mr. Niblet's January 29, 2024 Rule 33 interrogatory responses, Plaintiffs' counsel again made speaking objections and attempted to limit the witness's answers.  For example, UPS reviewed Mr. Niblet's response to Interrogatory No. 5, which sought the identity of each person from whom Mr. Niblet received medical treatment, attention, therapy, or counseling for any reason from January 1, 2019.  (Tr. 252:13-18 (App. 65).)  Mr. Niblet's written responses identified two physicians, and contained objections based on breadth, burden, and proportion/relevance.  During the deposition UPS sought information on whether Mr. Niblet's 2024 answer was complete and up to date, including whether he sought any treatment related to his claim for emotional distress:

> Q.   Are there any other doctors beyond *[identified providers]* whom you sought medical treatment from since January 1st, 2019?
>
> MR. SANFORD:  So we -- we do have – we did -- we did provide an objection that interrogatory was overbroad.
>
> MS. SIMONET:  I understand, I'm asking the witness.
>
> MR. SANFORD:  Okay.  So I think I can -- **I don't think you can bypass the interrogatory in your deposition**.

MS. SIMONET:  Are you – are you moving for protective order?

MR. SANFORD:  Yes.

MS. SIMONET:  And you would like to end the deposition to do so.

MR. SANFORD:  **I guess have to suspend it if you're going to go forward on whether or not he has to answer that question, yeah.**

MS. SIMONET:  Okay.

MR. SANFORD:  Because we --

MS. SIMONET:  So you want to – you're suspending deposition and moving for protective order.

MR. SANFORD:  I'm not -- **we were preserving this -- this objection to the interrogatory?**

We are doing that, and you want to go beyond the objection to the interrogatory; is that correct?

…

MS. SIMONET:  My question during the deposition is whether he's seen any medical providers since 2019.

MR. SANFORD:  It says basically the same as interrogatory number 5 correct?

MS. SIMONET:  I'm asking him a deposition question.

MR. SANFORD:  Right which is basically the same as interrogatory number 5, correct?

MS. SIMONET:  It's in the scope of the deposition. We're operating under a different set of discovery rules. I can ask him --

MR. SANFORD:  Well, no it's the same discovery rules so --

MS. SIMONET: I can ask him the question. If you have an objection based on relevance, the court has said that you cannot make that objection at this time. You can object based on form and he can answer the question.

MR. SANFORD: I could -- I am trying to clarify. **You're asking the same question as interrogatory number 5 to the client and where we have preserved objections and not answered them in the interrogatory and now you want to get the answer through a deposition that we've objected to on the interrogatory correct.**

…

MS. SIMONET: My question is just whether he's seen anyone?

…

MR. SANFORD: Oh. As opposed to identify who it was?

MS. SIMONET: Well, right now I'm just asking a yes-or-no question. I don't know what my next question is.

MR. SANFORD: Okay. **You can answer yes or no. I think he's already answered yes or no but yes.**

…

MR. SANFORD: So just **– all you have to answer is yes or no … if you've seen anybody, but you don't have to give any names.**

(Niblet Tr. 253:18-257:23 (App. 65) (emphasis added).)

Later, Plaintiffs' counsel directed Mr. Niblet not to answer questions regarding his responses to UPS's Rule 34 Requests for Production. As background, UPS served Requests for Production on December 22, 2023 (requesting email

communications and including email search terms); prior to the morning of his deposition, Mr. Niblet produced only six documents.[2] He testified that he did not understand he had an obligation to preserve documents. (*Id.* 277:11-16.) As such, UPS asked questions about his search for documents. Counsel directed Mr. Niblet not to answer each of UPS's questions:

> Q: What did you do to find relevant documents?
>
> MR. SANFORD: **And I'm going to instruct the witness not to answer based on judge Horan's decision in *Herman v. Hewlett-Packard Financial Services Company*, Westlaw cite is 2024 WL 4647715, that discovery on discovery is generally not permitted unless specific deficiency is shown.** There hasn't been a specific deficiency in anything that we've done, and so **it's outside the scope. I think it's also work product, but it's outside the scope** for the reasons stated in Judge Horan's opinion in that case as well as his opinion in *VeroBlue Farms USA v. Wulf* and other opinions in southern district and the Northern District all saying that discovery on discovery is prohibited.
>
> …
>
> A: Mr. Niblet do you know that before today, you produced six documents in this litigation?
>
> A.   I'm not – I'm not sure.
>
> Q.   When you were looking for documents for this case, did you look for emails?
>
> MR. SANFORD: Okay. **And I instruct you not to answer based on the same reasons I just gave.**

---

[2] The morning of his deposition, Mr. Niblet produced 14 additional pages of documents (including the notes he planned to use in his deposition).

…

Q:    Did you look at text messages to give to your counsel regarding your lawsuit or your claims against UPS?

MR. SANFORD:  **And I'm going to instruct the witness not to answer based on the same privilege and decision by Judge Horan at other courts in Texas.**

…

Q:  What did you do to preserve documents for this litigation meaning save them so they didn't get deleted?

MR. SANFORD:  **Same objection.  Same instruction.**

…

Q: What is your email address?

A:   [email address]

Q.    Did you check your home email for communications regarding this lawsuit or your claims?

MR. SANFORD:  **Same objection for the same reason and same instruction.**

…

  Q.    Did you look on Facebook for any posts regarding your work at UPS?

MR. SANFORD:  **Same objection, same instruction.**

**…**

 Q.    Do you think you have any other files at home with medical records or requests for FMLA records related to UPS?

MR. SANFORD:  **Same objection, same instruction.**

(Tr. 277:24-279:5; 279:23-281:7; 281:24-283:11; 284:15-285:7; 285:13-16; 296:2-6; 300:1-7 (App. 71-73, 76, 77) (emphasis added).)

The following day, UPS reconvened Plaintiff Betty Joshua's deposition pursuant to the Court's Order.  When UPS questioned Ms. Joshua about a document she produced through discovery, Plaintiffs' counsel stopped questioning to make speaking and relevance objections:

> MR. SANFORD:  Point of clarification.  So we're dealing with incidents after the lawsuit right?  Including January of last year right?
>
> MS. SIMONET:  Yes.
>
> MR. SANFORD:  **And so there's a issue what's relevant in this case right?**
>
> MS. SIMONET:  I would say you can make your objection and we can look at that after the deposition.
>
> MR. SANFORD:  No, that's fine because I mean, it would be -- it would be great if we tried all this at trial, right?  **So is UPS taking the position that all this is relevant to trial, this trial?**
>
> MS. SIMONET:  No.
>
> MR. SANFORD:  **So it's not relevant to this case**.
>
> MS. SIMONET:  I didn't say it wasn't relevant.  I didn't say it might not lead to the admissibility of relevant information.  I'm just asking questions in a deposition.
>
> MR. SANFORD:  About -- about –
>
> MS. SIMONET:  About a document?

MR. SANFORD:  Issues that are not going to be relevant at trial.

MS. SIMONET:  I don't know right now if this will be relevant at trial.  Right now I'm just asking questions about a document that was produced by Ms. Joshua.

MR. SANFORD:  **Well, it's -- I guess I need clarification on whether -- either this is -- either this relevant or it's not.  I think that's the scope of discovery.**

MS. SIMONET:  That's not the scope of a deposition, and if you have relevance objections, you can state your -- actually, you don't have to make relevance objections during the deposition per the Court's order.

MR. SANFORD:  I know.

MS. SIMONET:  You can object to form.

MR. SANFORD:  I guess we gotta take a break.  I mean, I want to follow the Court's order, and my understanding is not – it's not leads to evidence.  **It is relevant and proportional.**  Those are the only two things, but I will -- can we take a break for a second.

(Ex. B (Joshua Deposition Transcript, Volume II) Tr. 424:5-425:25 (App. 172-173) (emphasis added).)  When UPS sought to question Ms. Joshua regarding the timeline notes she brought to her October deposition (which were addressed in the Court's order, Dkt. 83 at 4-6),   Plaintiffs' counsel answered questions, made speaking objections, and claimed privilege over notes/timeline that Ms. Joshua brought to her first deposition:[3]

---

[3] Notably, this is the same timeline for which Ms. Joshua testified in October that she alone created. (Dkt 75-2 , Joshua Vol. I, 260:1-22; 291:12-22 ("I made my timeline…I made it. I – that's

Q.    Who did the typing?

MR. SANFORD:  **So I'm going to have to -- so it deals
with work product.  "Who" deals with work product
and attorney-client privilege.**

MS. SIMONET:  This is a document Ms. Joshua brought
to her deposition.

MR. SANFORD:  Right.

MS. SIMONET:  Okay.  And you're claiming privilege?

MR. SANFORD:  Well –

MS. SIMONET:  You can make your objections, I
suppose, if that's what you want to do.

MR. SANFORD:  Right.  Have to think about it.  Like,
so if an attorney -- if an attorney types up a document
with information that is given by the clients, is that work
product?  If you type up something that's your notes and
you turn it over, guess we could say –

**I could tell you BB Sanford typed it from information
given by all the plaintiffs.**

MS. SIMONET:  Okay.

MR. SANFORD:  That's how it happened

…

Now, does that cross over to attorney-client privilege?
Work product?  I don't know, but that's what we did.

MS. SIMONET:  Okay.

MR. SANFORD:  And we gave it to you as if we were
doing an interrogatory answer.  You know, give an

---

my truth. No one but me."). And later during that deposition, Plaintiffs' counsel asked Ms. Joshua
if she would like to incorporate her timeline—attorney created—into Ms. Joshua's testimony. (Dkt
75-2, Joshua Vol. I, 350:17-351:15; Ex. 42) (filed under seal).)

> interrogatory answer, who typed up the interrogatory
> answer?  **Did your attorney do it? Is that privileged?
> Is that work product?**  I don't know.  **Probably so.**
> That's what happened.

(Joshua Tr. 457:22-459:10 (App. 181) (emphasis added); *see also* Tr. 460:17-461:8

(App. 181-182) (counsel testifying that co-counsel created other timeline

versions).)

## <u>ARGUMENT</u>

### I.    **The Court Should Enforce Its Protective Order.**

UPS seeks enforcement of the Court's November 19, 2024 Order to prevent

further discovery misconduct pursuant to Fed. R. Civ. P. 37(b).  This Court has

already instructed the parties regarding the use of notes and objections during

depositions, as follows:

> Plaintiffs' counsel is advised that inappropriate speaking
> objections and coaching of witnesses in the defense of
> future depositions may result in independent sanctions.
> Plaintiffs' counsel shall not coach Plaintiffs during
> depositions. **Plaintiffs shall not rely on their notes
> prepared for testimony during the deposition(s).** ….
>
> In the remaining depositions in this case, all counsel shall
> be limited to objections and instructions as follows:
>
> a. Objections to questions during the oral deposition are
> limited to "Objection, leading" and "Objection, form."
> Objections to testimony during the oral deposition are
> limited to "Objection, nonresponsive." **These objections
> are waived if not stated as phrased during the oral
> deposition.** All other objections need not be made or
> recorded during the oral deposition to be later raised with
> the applicable court according to its rules. The objecting

party must give a clear and concise explanation of an
objection if requested by the party taking the oral
deposition, or the objection is waived.

b. Unless permitted by Federal Rule of Civil Procedure
30(c)(2)1 a party may not instruct a deponent not to
answer a question.

(Dkt. 83 at 2 (emphasis in original).)

Despite this clear instruction, Plaintiffs and Plaintiffs' engaged in this exact

conduct after the Order.  Plaintiff Niblet arrived at his deposition with notes and

testified that he might change his testimony at trial if he could not use them.  Further,

within the first ten minutes of the deposition, counsel made the exact objections

(including "abusive") that the Court noted was not supported by law, as well as

relevance objections and other improper speaking objections (such as stating that a

witness could never truly understand UPS's question) which are not proper. *See*

*VeroBlue Farms USA Inc.*, 345 F.R.D. 406, 421–22 (N.D. Tex. 2021) ("courts have

generally concluded that it is improper to instruct a witness not to answer a question

based on a relevancy objection").

In addition, counsel should not be permitted to coach and instruct a witness to

limit his answer based on counsel's earlier interrogatory objections.  (*See* Niblet Tr.

253:22-24 (App. 65) (objecting to question as "overbroad" based on interrogatory

objections)).   In short, in a case that includes FMLA and workers' compensation

claims, and where Plaintiff seeks damages for mental anguish, Plaintiffs' counsel

attempted to block routine and entirely proper questions seeking to discover the identity of Mr. Niblet's health care providers.  While Mr. Niblet did eventually answer UPS's question, he did so only after length debate from Plaintiffs' counsel. (Tr. 253:22-257:19 (App. 65).)

UPS is unable, alone, to enforce the Order.  UPS is slated to take the depositions for the remaining five Plaintiffs (including the continuation of Plaintiff Sharp's deposition) between February 21, 2025 and March 20, 2025.  Absent additional Court intervention, UPS anticipates that discovery abuse will continue. As such, UPS requests that the Court enforce the Order by requiring that each Plaintiff, and each of Plaintiffs' counsel, appear before the Court and certify to the Court that they have read and understand the November 19, 2024 Order and will comply with it.

## II.    The Court Should Compel Plaintiff Niblet to Answer Questions He Was Inappropriately Instructed Not to Answer.

As UPS previously noted, "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2). "Directions not to answer a question can be even more disruptive than objections." *Keplar v. Google, LLC*, 346 F.R.D. 41, 51 (N.D. Tex. 2024) (citing *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 n. 7 (S.D. Tex. 2011) (quoting Fed. R. Civ. P. 20(d) 1993 Advisory Committee's Note).

Despite this standard, and despite the Court's explicit Order, during Plaintiff Niblet's deposition, counsel instructed Mr. Niblet not to answer UPS's appropriate questions. When UPS asked for the grounds, Plaintiffs' counsel asserted the questions were "outside the scope" and maybe "work product." Counsel cited two cases: *Hermann v. Hewlett Packard Enterprises*, 2024 WL 4647715 (N.D. Tex. October 31, 2024) (discussing appropriate scope of a Rule 30(b)(6) deposition) and *VeroBlue Farms USA, Inc. v. Wulf*, 345 F.R.D. 406 (N.D. Tex. 2021). Neither stands for the proposition that an instruction not to answer on the scope of discovery searches is appropriate; in fact, *VeroBlue* states just the opposite. *VeroBlue Farms USA Inc.*, 345 F.R.D. 406, 421–22 (N.D. Tex. 2021) ("courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection"). Nor is there any support for the contention that asking a witness if he searched his emails somehow invades work product (because it does not, particularly where, as here, the Court's order specifically sets out email production parameters).

Deposition questions regarding discovery process are appropriate for a fact witness, and moreover, especially appropriate given Mr. Niblet's minimal production to date and his testimony that he was unaware that he had a duty to preserve documents. Moreover, although UPS requested documents more than a year ago, Mr. Niblet appeared for his deposition with unproduced notes and other

documents, raising questions regarding his productions.  The Court should therefore compel Plaintiff Niblet to answer these appropriate deposition questions.

## III.    The Court Should Enter Relief Under Rule 37.

The Court's November 19, 2024 Order was clear in its instruction: "The Court warns Plaintiffs' counsel that any future failures to strictly comport with this Court's orders, policies, and procedures; the Federal Rules of Civil Procedure; the Federal Rules of Evidence; the local civil rules of the Northern District of Texas; and *Dondi* shall result in a show cause order and potential sanctions – including but not limited to disqualification from this litigation."  (Dkt. 83 at 7).

Under both this Court's Order and Fed. R. Civ. P. 37, relief is warranted.  UPS respectfully requests that the Court enter a show cause order and, ultimately, relief under Rule 37, including but not limited to (a) payment of UPS's counsel's fees and costs spent to prepare the present motion; (b) payment of UPS's counsel's fees and costs spent reconvening the deposition of Mr. Niblet (if so ordered by the Court), (c) payment of UPS's counsel's fees and costs spent in preparing and taking Ms. Joshua's second deposition (warranted by counsel's earlier misconduct); and (d) other relief as the Court sees fit.

## <u>CONCLUSION</u>

For the reasons stated herein, UPS respectfully requests that the Court enforce its November 19 Order, order Mr. Niblet to fully answer UPS's appropriate deposition questions, and enter appropriate relief under Rule 37.

Dated: February 21, 2025

*s/ Elizabeth L. Dicus*
JONES DAY
Aaron Agenbroad*
555 California Street, 26th Floor
San Francisco, CA 94104
alagenbroad@jonesday.com
Phone: +1.415.875.5808

Brian Jorgensen
Texas State Bar No. 24012930
2727 N. Harwood St.
Dallas, TX 75201
bmjorgensen@jonesday.com
Phone: +1.214.220.3939

Elizabeth L. Dicus*
325 John H. McConnell Blvd, Suite 600
Columbus, OH 43215
eldicus@jonesday.com
Phone: +1.614.281.3873

Kristin Simonet*
90 Seventh Avenue S., Suite 4950
Minneapolis, MN 55419
ksimonet@jonesday.com
Phone: +1.612.217.8873

Julia Camp
Texas State Bar No. 24123598
717 Texas, Suite 3300
Houston, TX 77002
juliacamp@jonesday.com
Phone: +1.832.239.3758

*Admitted pro hac vice*

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the word count is 3,859 and 14-point font is used in the body of this Motion in compliance with L.R. II(A).

_/s/ Elizabeth L. Dicus_
Elizabeth L. Dicus

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served upon Plaintiffs' counsel of record on February 21, 2025, via the Court's CM/ECF System.

*/s/ Kristin M. Simonet*
Kristin M. Simonet

## **CERTIFICATE OF CONFERENCE**

I certify that the parties, through UPS's counsel Brian Jorgensen, Elizabeth Dicus, and Kristin Simonet and Plaintiffs' counsel Brian Sanford and Elizabeth Sanford, conferred on UPS's Motion to Enforce Protective Order, Motion to Compel Additional Testimony of Plaintiff Niblet, and for Relief Under Rule 37 during the depositions of Plaintiffs Niblet and Joshua, via email on February 20, 2025, via phone on February 20, 2025, and in-person on February 21, 2025. The parties did not reach agreement and Plaintiffs' counsel indicated they oppose UPS's motion.

*/s/ Elizabeth L. Dicus*
Elizabeth L. Dicus