# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LARRY CALDWELL, AARON NIBLET, JORDAN EVANS, RYAN BELL, WILLIAM MASSEY, WILLIAM SHARP, EARL BULLOCK DAVID SMITH, and BETTY JOSHUA | § § § § § § | |
| *Plaintiffs*, | § § | Civil Action 3:23-cv-1315 |
| vs. | § § | **JURY DEMANDED** |
| UPS CARTAGE SERVICES, INC., | § § § | |
| *Defendant.* | § § | |

## PLAINTIFFS' RESPONSE TO EXPEDITED
## MOTION TO ENFORCE PROTECTIVE ORDER, TO COMPEL
## ADDITIONAL TESTIMONY, AND FOR RELIEF UNDER RULE 37

TO THE HONORABLE ADA BROWN:

Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113
**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES................................................................... iii

Facts ............................................................................................................ 1

Failure to Meaningfully Confer ................................................................ 6

Factual Events ........................................................................................... 8

Argument.................................................................................................. 15

    The Standard....................................................................................... 15

    Objections to the Assumption Questions........................................... 17

    Privileged Medical Providers ............................................................ 20

    Discovery on Discovery ..................................................................... 20

    Events After the Filing of the Lawsuit .............................................. 21

    The Timeline....................................................................................... 21

    Good Faith and No Intentional Violation .......................................... 22

CERTIFICATE OF SERVICE ................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Devaney v. Continental Am. Ins. Co.*,
  989 F.2d 1154 (11th Cir. 1993) ............................................................ 16

*Herrmann v. United States*,
  127 Fed. Cl. 22 (2016) ....................................................................... 19

*Horton v. Maersk Line, Ltd.*,
  294 F.R.D. 690 (S.D. Ga. 2013) .......................................................... 19

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 11730953 (N.D. Cal. Dec. 8, 2016) ....................................... 19

*Jackson v. Wexford Health Sources, Inc.*,
  2023 WL 8020725 (S.D. Ill. Nov. 20, 2023)........................................... 15

*Keplar v. Google, LLC*,
  346 F.R.D. 41 (N.D. Tex. 2024)..................................................... 16, 20

*Kouza v. United States*,
  2023 WL 8375215 (E.D. Mich. Jan. 3, 2023)......................................... 19

*Otis v. Demarasse*,
  399 F.Supp.3d 759 (E.D. Wis. 2019) ...................................... 15, 17, 18

*Pierce v. Underwood*,
  487 U.S. 552, (1988) .......................................................................... 16

*S.E.C. v. Kiselak Capital Grp., LLC*,
  2012 WL 369450 (N.D. Tex. Feb. 3, 2012) .......................................... 16

*Stanford v. Northmont City Sch. Dist.*,
  2022 WL 634886 (S.D. Ohio Mar. 4, 2022) .......................................... 19

*VeroBlue Farms USA Inc. v. Wulf*,
  345 F.R.D. 406 (N.D. Tex. 2021).................................................... 20, 21

**Rules**

Federal Rule of Civil Procedure 30(c)(2) ................................................ 4, 10, 18, 20

Rule 30 ............................................................................................................ 10, 20

Rule 30(d)(2) ......................................................................................................... 15

Rule 30(d)(3) ..................................................................................................... 5, 19

TO THE HONORABLE ADA BROWN:

Plaintiffs Larry Caldwell, Aaron Niblet, Jordan Evans, Ryan Bell, William Massey, William Sharp, Earl Bullock, David Smith, and Betty Joshua ("Plaintiffs") respond to Defendant UPS Cartage Services, Inc.'s Expedited Motion to Enforce Protective Order, to Compel Additional Testimony of Plaintiff Niblet, and for Relief Under Rule 37. The motion should be denied because . . . .

UPS's motion is procedurally deficient as Plaintiffs' counsel failed to properly meet and confer regarding the full scope of the Motion.

### FACTS

This is a race discrimination and retaliation lawsuit by nine individuals employed by UPS. (ECF No. 1). On October 15, 2024, UPS deposed Plaintiff Betty Joshua at the offices of Jones Day. (ECF No. 85 at1). Plaintiffs agreed to have their depositions at defense counsel's office at the urging of UPS's attorneys based on the need to have access to its documents at the deposition. The custom in Dallas is for the plaintiffs and their witnesses to be at the plaintiff counsel's office and for the defendants and their witnesses to be at defendant's counsel office. In a spirit of cooperation, Plaintiffs agreed.

UPS chose not to videotape Ms. Joshua's initial deposition at its office. (ECF No. 85). When Plaintiffs' counsel requested to record the deposition, UPS refused. Ex. 1, P. 8. During the deposition, UPS's counsel bullied and intimidated Ms. Joshua

unprofessionally in a demeaning and berating manner to the point of tears. Ex. 1, 2, 3, 4. When Ms. Joshua requested a break to collect herself, UPS refused for a prolonged period. Ex. 1, P. 13; Ex. 3, P. 6.

At Ms. Joshua's first deposition, Plaintiffs' counsel made objections such as, "confusing, argumentative, misleading, harassing" (ECF No. 85) (Joshua 12:2-3); "misleading and abusive" (ECF No. 85) (Joshua 14:2-3) "asked and answered" (ECF No. 85) (Joshua 17:1-2); "attorney-client privilege" (ECF No. 85) (Joshua 19:4-5) "argumentative" (ECF No. 85) (Joshua 98:20), "misstates the testimony" (ECF No. 85) (Joshua 99:4-5); "assumes facts not in evidence" (ECF No. 85) (Joshua 150:4-5); "sidebar" (ECF No. 85) (Joshua 187:4-5); "calls for a legal conclusion" (ECF No. 85) (Joshua 238:22-24); "work-product privilege" (ECF No. 85) (Joshua 249:15-16); and "not relevant" (ECF No. 85) (Joshua 327:6). Occasionally, Plaintiffs counsel elaborated with statements such as, "My client is not a lawyer and does not have to know how to legally prove her claim" (ECF No. 85) (Joshua 173:24-25), and "Don't go into what you discussed with the [other] plaintiffs about the case, please (ECF No. 85) (Joshua 269:2-4).

UPS counsel made similar objections, such as, "vague" (ECF No. 85) (Joshua 350:7), "foundation" (ECF No. 85) (Joshua 352:11); "legal conclusion, form, argumentative, leading" (ECF No. 85) (Joshua 359:4-5); "form, vague, compound,

foundation" (ECF No. 85) (Joshua 365:5-6); and "misstates testimony, leading, form" (ECF No. 85) (Joshua 368:14-15).

To abusive questions, Plaintiffs' counsel made objections such as "Objection, confusing, argumentative, misleading, harassing." (ECF No. 85) (Joshua 10:24-25).

At Plaintiff William Sharp's deposition Plaintiffs' counsel made objections the same kind of objections such as, "work product and attorney-client privilege" (ECF No. 84) (Sharp 14:6-7); "harassing" (ECF No. 84) (Sharp 97:21); "misquotes the witness" (ECF No. 84) (Sharp 98:16-17); "misstates the witness and argumentative" (ECF No. 84) (Sharp 105:23-24); "legal conclusion" (ECF No. 84) (Sharp 206:5-6); "speculation" (ECF No. 84) (Sharp 218:16); "ambiguous" (ECF No. 84) (Sharp 236:8); "legal conclusion and is harassing and abusive" (ECF No. 84) (Sharp 268:2-3); "asked and answered" (ECF No. 84) (Sharp 270:24); and "compound question" (ECF No. 84) (Sharp 289:20-21). Plaintiffs' counsel also objected Mr. Sharp not being allowed to use his notes. (ECF No. 84) (Sharp 96:20-23) and to a document that allow created by other plaintiffs and their attorney (ECF No. 84) (Sharp 270:14-19).

At Mr. Sharp's UPS made objections such as, "leading" (ECF No. 84) (Sharp 329:5); "form" (ECF No. 84) (Sharp 330:7); "calls for a legal conclusion" (ECF No. 84) (Sharp 330:24-25); and "lack of foundation" (ECF No. 84) (Sharp 332:2-3).

Plaintiffs did not file a motion for sanctions or seek relief from the abusive and harassing conduct by Defendant's counsel at Ms. Joshua's deposition. On the other hand, UPS filed a Motion to Stay Discovery, for Protective Order, and to Compel Additional Testimony of Plaintiffs Sharp and Joshua which the Court granted. (ECF No. 83). The Court ordered that UPS may have an additional two hours each for the depositions of Ms. Joshua and Mr. Sharp. The Court ordered Plaintiffs' counsel to not make "inappropriate speaking objections and coaching of witnesses." (ECF No. 83, ¶ 1). The Court ordered that Plaintiffs not rely on their notes prepared for testimony during the deposition(s). (ECF No. 83, ¶ 1). The Court ordered that objections questions during deposition are limited to "Objection, leading" and "Objection form." (ECF No. 83, ¶ 2(a)). The Court ordered that unless permitted by Federal Rule of Civil Procedure 30(c)(2) a party may not instruct a deponent not to answer a question. (ECF No. 83, ¶ 2(b)). The Court footnoted Federal Rule of Civil Procedure 30(c)(2) which references objections "to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition" which " must be noted on the record." (ECF No. 83, ¶ 2(b) n. 1). The Court further emphasized the rule's provisions that an "objection must be stated concisely in a nonargumentative and nonsuggestive manner" and that a person "may instruct a deponent not to answer only when necessary to preserve a

privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." (ECF No. 83, ¶ 2(b) n.1).

In the order, the Court commented on Plaintiffs' counsel previous failure to comport with conferencing requirements on a motion. (ECF No. 83, ¶ 4). That motion was for leave to supplement the pleadings within the pleading deadline to add discrimination and retaliation claim that arose after the filing of the lawsuit. (ECF No. 25). Plaintiffs' counsel attempted to confer with UPS's counsel four days before the deadline to amend pleadings. (ECF No. 32, ¶ 2) Declaration. UPS responded three days later with a request to review the propose pleading. (ECF No. 32, ¶2) Ex. 5, P. 5. Plaintiffs provided the proposed supplemental complaint the next day, the day of the deadline. (ECF 32, ¶ 2) Ex. 5, P. 5. UPS stated that it did not have enough time to review the proposed pleading. (ECF 32, ¶ 2). UPS knew the basic claims were for continued discrimination and retaliation claims. Ex. 5, P. 5. Plaintiffs' counsel inadvertently omitted the certificate of conference from the motion. (ECF No. 25, ¶ 3). The Court found, in a footnote, that objections that counsel was "abusive" or "harassing" were examples of objections not based on law. (ECF No. 83). The Court denied the motion for leave to supplement the pleadings in part because of the failure to confer. (ECF No. 62).

To avoid continued confrontations, Plaintiffs have agreed to waive some objections previously made, such as Attorney-Client privilege for fee agreements,

misleading confusing questions concerning assuming facts, and plaintiff communications among themselves about the case. The objections are valid and appropriate, but because of the contentiousness of UPS, Plaintiffs withdrew from these battles.

## Failure to Meaningfully Confer

UPS did not ultimately have a meaningful conference about the motion. At the deposition of Aaron Niblett on February 12, 2025, Brian Sanford discussed with Kristen Simonet objections on and off the record. (ECF No. 91-1) (Niblet 15:23-22:2). The disputes to be resolved were the objection to discovery on discovery and the identity of medical providers who did not treat for mental anguish. Ex. 6, P. 31. (ECF No. 91-1) (Niblet 278:2, 284:18-20).  On February 20, 2025, Elizabeth Dicus sent an email to Plaintiffs' counsel seeking to confer on a motion for enforcement, to compel, and for sanctions, citing and attaching pages 8, 9, 11, 12, 252, 277-279, 281-283, 284-286, 296-96, 300. Ex. 6. The request for enforcement and sanctions came as a surprise. Ex 5, P. 33. Mr. Sanford expected a discovery motion based on the objections but not one accusing him of violating the Court's order. Ex 5, P. 38. Mr. Sanford attempted to reach Aaron Agenbroad, UPS's lead counsel to confer about the motion at possibly a more reasonable level. Ex 5, P. 38. Mr. Sanford also contacted Brian Jorgenson about the motion, with whom he had a previous good relationship on a previous case. Ex 5, P. 38. Mr. Agenbroan did not return Mr.

Sanford's telephone call, Mr. Jorgenson did. In a telephone call, Mr. Sanford informed Mr. Jorgenson that Plaintiffs had potential sanction remedies against UPS based on Ms. Joshua's deposition and compliance issues with Judge Toliver's order compelling discovery. Ex 5, P. 38. Mr. Jorgenson said he was not directly involved but would talk with the other attorneys for UPS. Ex 5, P. 38. The next day, at Ms. Joshua's second deposition, again at the office of Jones Day, Mr. Sanford had a discussion with Ms. Dicus before the deposition about UPS's proposed motion. Ex 5, P. 38. Ms. Dicus had spoken with Mr. Jorgenson and said that they agreed to deescalate the motion to not include sanctions, to simply obtain rulings on the disputed discovery issues. Ex 5, P. 38. However, during the deposition on 13, 2025, UPS filed its motion, seeking not just a resolution of discovery objections but alleging violations of the Court's order and seeking sanctions. Ex 5, P. 38. Additionally, UPS added page 14 of Mr. Niblet's deposition to its citation. Ex 5, P. 38. UPS did not confer on the issues on this page, which included Mr. Sanford's objection based on abusiveness that he withdrew. Ex 5, P. 38.

Mr. Sanford confronted Ms. Dicus about the agreement earlier that morning. Ex 5, P. 39. Mr. Sanford stated to Ms. Dicus that Plaintiffs have claims for sanctions for the conduct at Ms. Joshua's first deposition, as well as concerns about compliance with Judge Toliver's order. Ex 5, P. 39. Mr. Sanford represented to Ms. Dicus that resolving issue with cross-motions for sanctions was counterproductive,

that the parties could agree to disagree and have the Court rule on disputes without

devolving into cross motions for sanctions. Ex 5, P. 39. Ms. Dicus seemed to agree

and offered to have the matter resolved with a hearing before Judge Brown without

the necessity of further briefing. Ex 5, P. 39. This was a very satisfactory solution,

allowing the parties to present their issues to the Court live to lessen the chance of

misunderstandings, not only between the parties, but between the Court and the

parties. Ex 5, P. 39. Ms. Dicus followed up on the conversation by emailing the

Court via its email for proposed orders late Friday afternoon on February 21, 2025.

Ex 5, P. 39. The following Monday, Mr. Sanford forwarded the email to the Court's

coordinator. The Court declined to have a hearing and ordered expedited briefing,

reserving the right to administer sanctions. (ECF No. 94).

**FACTUAL EVENTS**

Plaintiff Aaron Niblet did bring notes to his deposition on February 12, 2025;

however, Plaintiffs' counsel instructed Mr. Niblet not to use his notes during his

deposition and he did not. Ex 5, P. 14. Mr. Niblet acknowledged at the outset of the

deposition that he needed to testify without any notes. (ECF No. 91-1) (Niblet 8:18-

19).

Q. And you understand you're here today so

I can ask you questions regarding your claim

against UPS?

A. Yes, without any notes. I can't have my

notes.

(ECF No. 91-1) (Niblet 8:18-19). Mr. Niblet did not use is notes at any time during the deposition. Ex. 5, P. 14).

Plaintiffs' counsel did object to the manner of the deposition and did initially make an objection to a question on the basis that it was "abusive." (ECF No. 91-1) (Niblet 14:17-18). The attorneys then had a discussion about the Court's order concerning objections. (ECF No. 91-1) (Niblet 14:19-22:2). Plaintiffs' counsel acknowledges that based on the Court's order, he should not have used the word "abusive" as part of an objection. Ex. 5, P. 15. Plaintiffs' changed the objection to "objection form" and Mr. Niblet to answer the question. (ECF No. 91-1) (Niblet 23:20-24:18). This was the single time Plaintiffs' counsel used the objection and he did not assert an objection based on abusiveness at any other time in the deposition.

Plaintiffs' counsel's concern was the proper procedure for dealing with an abusive question. Although Plaintiffs' counsel should have objected by stating "Objection form" initially, UPS's counsel did ask for an explanation for the grounds and engaged in a colloquy with Plaintiffs' counsel in depth about the reason for the objection or instruction not to answer. (ECF No. 91-1) (Niblet 14:19-22:2). UPS cannot assert, and does not appear to assert, that the colloquy in which it sought to engage is a speaking objection or coaching of the witness.

Plaintiffs' counsel thought he was following the Court's order at the time by making the objection based on footnote 1 of the order concerning objections. Ex. 5, P. 16. The footnote quotes Fed. R. Civ. P. 30(c)(2) that "an objection . . . to a party's conduct, . . . to the manner of taking the deposition, or any other aspect of the deposition – must be noted for the record." Plaintiff's counsel was concerned that if he did not object based on the manner of the deposition, which included annoying, embarrassing, or oppressing, might result in a waiver by not following the Rules as the Court required. Ex. 5, P. 16-7.

Plaintiffs' counsel incorrectly used the word "abusive" and on a re-reading the order at the deposition withdrew the objection because the Court, in another footnote had said that an objection based on abusiveness is not based on law.

Plaintiffs' counsel tried to make sure the objection would not be waived by asking UPS to stipulate that the objection to abusive behavior is not waived if he does not state it for the record as provided in Rule 30. Ex. 5, P. 18. Counsel for UPS would not so stipulate. Ex. 5, P. 18.

On a break, Plaintiffs' counsel re-read the order again and realized that he may not have followed the Court's intent of the order and withdrew the objection. Ex. 5, P. 19. Plaintiffs' counsel apologizes to the Court for using the word "abusive" as admonished by the Court. Ex. 5, P. 19. He did my best to cure the error and does not believe UPS is prejudiced. Ex. 5, P. 19. Plaintiffs' counsel had a difficult time, and

still has a difficult time, understanding and reconciling the Court's instructions in the order with the Federal Rules of Civil Procedure. Ex. 5, P. 19. Plaintiffs' counsel responded when UPS's counsel requested an explanation of the objection.

Later in the deposition, UPS's counsel presented an interrogatory answer signed by Mr. Niblet to the question of doctors to whom he sought treatment. (ECF No. 91-1) (Niblet 251:1) Ex. 7. Mr. Niblet objected to the interrogatory to the extent it was overly broad, unduly burdensome, not proportional or relevant to the case and protected by a right of privacy. Ex. 7, P. 3. Mr. Niblet did not identify medical providers who did not provide services for mental anguish kinds of damages. Ex. 7, P. 3.

When UPS's counsel asked whether Mr. Niblet had other medical providers, Plaintiffs' counsel was not expecting this question. Ex. 5, P. 26. He noted for the record that Plaintiff had made the objection in the interrogatory and that counsel was concerned that UPS's counsel was bypassing the written objection. Ex. 5, P. 27. UPS's counsel asserted that Plaintiff's counsel had to suspend the deposition and file a motion for protective order, a drastic measure. Ex. 5, P. 27. When Plaintiffs' counsel responded that he may need to suspend the deposition to protect the objection, UPS's attorney explained that at that moment she was only asking a yes or no question of whether there were other doctors he had seen. Ex. 5, P. 28. Plaintiffs' counsel then allowed this question and answer.

Plaintiffs' counsel's statements on the record were part of a colloquy or conference that started with noting the written objection. Ex. 5, P. 29. The conference was for the purpose of understanding UPS's position on how to protect the objection. Ex. 5, P. 29. Plaintiffs' counsel believed he had a duty to confer before taking the drastic position of suspending the deposition. Ex. 5, P. 29. It turned out that the discussion resulted in the parties resolving the issue successfully. Ex. 5, P. 29.

No coaching was involved, other than making sure the witness did not waive the objection by giving a name. Ex. 5, P. 30. Had Plaintiffs' counsel not made sure that the witness answered yes or no, he might have waived his objection, which included a privacy privilege. Ex. 5, P. 30. Plaintiffs' counsel believed that this was all proper and not a violation of the Court's order. Ex. 5, P. 30. UPS' counsel clarified that she was only asking for a yes or no answer. Ex. 5, P. 30. Plaintiffs' counsel had a duty to prevent his client from waiving a privilege objection. Ex. 5, P. 30. It would be no different from instructing the witness not to disclose attorney-client communications. Ex. 5, P. 30.

When UPS's counsel asked a question about discovery on discovery, Plaintiffs' counsel instructed the witness not to answer and provided the legal basis. Ex. 5, P. 31. Plaintiffs' counsel stated on the record that he wanted to make sure that he was following the Court's order and asked UPS's counsel if the order addressed this issue. Ex. 5, P. 31. UPS's counsel did not respond except to say she knew that

the order said object or tell him not to answer if I believe I had a basis to do so. Ex. 5, P. 31. Plaintiffs' counsel responded that he believed he had a basis unless she had something to show me that she is allowed to question about discovery on discovery. Ex. 5, P. 31. She would not respond except to suggest to go off the record to review the Court's order. Ex. 5, P. 31.

Reviewing the order on the break, Plaintiffs' counsel observed that the Court's order did not address the issue of discovery on discovery. Ex. 5, P. 32. He further noticed that the order does not prohibit an explanation on the record of an attorney's reason for instructing a witness not to answer. Ex. 5, P. 32. Plaintiffs' counsel was not making an objection at the time, he was instructing the witness not to answer and engaging in a conference to try to prevent the suspension of a deposition. Ex. 5, P. 32. Plaintiffs' counsel believes that this was proper under order which does not prohibit counsel from conferring with each other on the record to resolve a possible suspension of the deposition and motion for protective order. Ex. 5, P. 32. There was no coaching on how to answer other than not to answer. Ex. 5, P. 32. The rest was an attempt to confer with counsel to prevent a suspension of the deposition or to understand UPS's basis for the question. Ex. 5, P. 32.

Plaintiffs' counsel did not have an opportunity to review Mr. Niblet's notes that he brought to the deposition to determine if he had seen them. Ex. 5, P. 33. It

was a surprise to him. Ex. 5, P. 33. Mr. Niblet did this of his own volition. Ex. 5, P. 33. Nevertheless, he did not review the notes during his deposition. Ex. 5, P. 33.

In the deposition, UPS's counsel asked questions about events after the lawsuit was filed for which the Court had denied leave to supplement the pleadings. Ex. 5, P. 34. Plaintiffs' counsel wanted to confer with counsel about the scope of the deposition. Ex. 5, P. 34. He was not making an objection at the time but trying to understand UPS's position on the scope of the case. Ex. 5, P. 34. Nothing in the order or the federal rules prohibits conferences between counsel to determine whether an objection should be made or an instruction not to answer or a motion for protective order. Ex. 5, P. 34. The parties could have gone off the record to have the discussion, but it was unnecessary. Ex. 5, P. 34. Plaintiffs' counsel needed clarification of UPS's position on the scope of the case to make a determination on an objection. Ex. 5, P. 34.

The parties did take a break to discuss the issue and whether Plaintiffs' counsel needed to make an objection or instruct the witness not to answer. After the break, Plaintiff's counsel allowed Ms. Joshua to answer the questions. Ex. 5, P. 35. These were not speaking objections. Ex. 5, P. 35. Plaintiffs' counsel did not make an objection. Ex. 5, P. 35. He conferred with counsel for clarification. Ex. 5, P. 35.

Plaintiffs' counsel believed and still believe that how the timeline was prepared is protected by the work-product doctrine and that Plaintiffs'

communications among themselves about the case is protected by the work product doctrine or a communication privilege. Ex. 5, P. 36. However, to avoid unnecessary conflicts on these issues we have waived the assertion of the protections and privileges for this information. Ex. 5, P. 36.

Plaintiffs' counsel always acted in good faith and did not intentionally violate any rules or court order. Ex. 5, P. 37. Neither UPS nor its counsel is prejudiced by my conduct. Ex. 5, P. 37.

## ARGUMENT

### The Standard

"[C]ourts must exercise care in deciding whether to impose sanctions so as not to sanction attorneys who zealously represent their clients within the bounds of the law and in conformity with the code of professional responsibility, no matter how frustrated their adversaries may find opposing counsel's manner of representation and how confident those adversaries are with their own position." *Otis v. Demarasse*, 399 F.Supp.3d 759, 766 (E.D. Wis. 2019) .

Plaintiff's attorney had a duty to object to questions that he believed were inappropriate, and it is only when an attorney repeatedly lodges improper objections or engages in other actions that impede, delay, or frustrate the fair examination of the deponent that sanctions are appropriate under Rule 30(d)(2). *Jackson v. Wexford Health Sources, Inc.*, No. 3:20-CV-00900-DWD, 2023 WL 8020725, at *5 (S.D. Ill.

Nov. 20, 2023), reconsideration denied, No. 3:20-CV-900-DWD, 2024 WL 278362 (S.D. Ill. Jan. 25, 2024).

"A party's discovery conduct is found to be 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *S.E.C. v. Kiselak Capital Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at \*5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565, (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at \*3 (footnote omitted). *See Keplar v. Google, LLC,* 346 F.R.D. 41, 53 (N.D. Tex. 2024).

The Fifth Circuit has stated that, "to levy a litigation-ending sanction for a discovery violation, the court must make four findings. *First*, the violation reflects bad faith or willfulness. *Second*, the client, not counsel, is responsible for the violation. *Third*, the violation substantially prejudiced the opposing party. *Fourth*, a lesser sanction would not substantially achieve the desired deterrent effect." UPS has not met its burden this case.

## Objections to the Assumption Question

The objection to UPS's question about the fairness of assuming understanding upon answering, in the proper form, has merit. Plaintiffs' counsel has objected to this question for years, when lawyers began to use it regularly in the introductory portions of their depositions. Ex. 5, P. 20. A fair question might be is to ask the deponent to inform the attorney if they do not understand the question, although that is not truly a question, but more of a command. An unfair question is to have the deponent agree that the attorney can assume that the deponent understood the question if the deponent answers the question. This might be a fair assumption most of the time but there may be times when the deponent does not know at the time that he or she does not understand the question but later, well after the deposition, realizes that he or she did not actually understand it. This happens frequently in everyday conversations with misunderstandings with context and pronouns, with only a later realization that the other person was not talking about that but talking about this. Courts have recognized this problem. *See Otis v. Demarasse,* 399 F. Supp. 3d 759, 769 (E.D. Wis. 2019) ("[T]he fact that a witness answers a question does not mean that the witness understood it; it may mean that the witness only thinks he understood the question or is too embarrassed to say he does not understand.").

The purpose of the attorney's question for an assumption is to prevent the deponent from changing or correcting an answer upon realizing the error. This may

not be a form objection because the question is unfair, abuses the process, and is not made in good faith. "Form" objections include objections to leading questions, lack of foundation, assuming facts not in evidence, mischaracterization, vague or misleading questions, lack of personal knowledge, speculative, asked and answered, argumentative, and compound questions. *See Otis v. Demarasse, 3*99 F. Supp. 3d 759, 765 (E.D. Wis. 2019) (noting that it is proper to make these objections at a deposition). These are not improper speaking objections.

Attorneys asking the assuming an understanding of the question if it is answered know that the question is not fair, and that it is a trap or trick question. Attorneys representing the deponent have a duty to protect against the improper question. Plaintiffs' counsel relented on that duty out of concern with violating the Court's order. Ex. 5, P. 23.

The Court ordered that counsel "must give a clear and concise explanation of an objection if requested by the party taking the oral deposition, or the objection is waived." (ECF No. 83, ¶ 2(a)). Plaintiffs' counsel satisfied this request with clear and concise explanation of the basis for the objection. Ex. 5, P. 22.

An ambiguity exists in the Court's order between the order to limit objections to question to "Objection, leading" and "Objection form" (ECF No. 83, ¶ 2(a)) and the reference to Fed, R. Civ. P. 30(c)(2) referencing objections "to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other

aspect of the deposition" which " must be noted on the record." (ECF No. 83, ¶ 2(b) n. 1). Objections to the manner of taking the deposition are not "form" objections. The Court further emphasized the rule's provisions that an "objection must be stated concisely in a nonargumentative and nonsuggestive manner" and that a person "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  (ECF No. 83, ¶ 2(b) n.1).

An objection that a deposition is abusive falls into the category of  "annoyance, embarrassment, oppression, or undue burden or expense." *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617 LHK (NC), 2016 WL 11730953, at *1 (N.D. Cal. Dec. 8, 2016) (quashing a deposition based on an assertion that it was "abusive"). Objecting to abusive questioning is proper. *Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 698 (S.D. Ga. 2013) (approving right to object to unprofessional if not abusive deposition questioning). Similarly, a person may object to deposition questions meant to harass. *See Kouza v. United States*, No. 21-12790, 2023 WL 8375215, at *3 (E.D. Mich. Jan. 3, 2023); *Herrmann v. United States*, 127 Fed. Cl. 22, 38 (2016) (a party may object on the record to argumentative or harassing questions) (Construing Rule of Federal Claims 30(c)(2)); *Stanford v. Northmont City Sch. Dist.*, No. 3:19-CV-00399, 2022 WL 634886, at *4 (S.D. Ohio

Mar. 4, 2022) (sanctions denied in part because counsel failed to object that the questions were harassing).

The remedy for an abusive or harassing question is to instruct the witness not to answer and proceed with a motion for protective order. *See Kepler,* 346 F.R.D. at 51. UPS's counsel's position is that Plaintiffs must take the extreme remedy of stopping or suspending the deposition until a motion for protective order can be heard. (Niblet 15:23-16:3). Plaintiffs counsel should not have used the word "abusive" as cautioned by the Court's footnote, but the substance of the objection and procedure was correct, and any prejudice was cured.

**Privileged Medical Providers**

Plaintiffs' counsel did not make an objection, except to note the written objection which included a privacy privilege. Rule 30 allows a party to instruct a person not to answer to preserve a privilege. FED. R. CIV. P. 30(c)(2). It would be no different from instructing the witness not to disclose attorney-client communications. The parties conferred at the deposition and resolved the issue.

**Discovery on Discovery**

UPS's counsel asked questions about discovery on discovery. Stating that a party has made a reasonable inquiry and no other documents exist is a satisfactory response to a question on the existence of requested documents. *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021). Discovery efforts or to

obtain "discovery on discovery" that is "both relevant and proportional to the needs of the case." *Id.* The information should also be protected by the work product doctrine.

When UPS's counsel asked a question about discovery on discovery, Plaintiffs' counsel instructed the witness not to answer and provided the legal basis. Plaintiffs are moving for a protective order on this issue and have already conferred with UPS's counsel who opposes the motion.

**Events After the Filing of the Lawsuit**

The Court denied Plaintiffs' motion to supplement the pleadings to add claims that arose after the filling of the lawsuit. When UPS's counsel asked questions about events after the lawsuit was filed, Plaintiffs' counsel wanted to confer with counsel about the scope of the deposition. Nothing was improper about this conference and it did not violate the Court's order because Plaintiffs' counsel was neither making an objection or instructing the witness not to answer.

**The Timeline**

Plaintiffs' counsel believed and still believe that how the timeline was prepared is protected by the work-product doctrine and that Plaintiffs' communications among themselves about the case is protected by the work product doctrine or a communication privilege. However, to avoid unnecessary conflicts on

these issues Plaintiffs have waived the assertion of the protections and privileges for this information.

**Good Faith and No Intentional Violation**

Plaintiffs' counsel always acted in good faith and did not intentionally violate any rules or court order. Neither UPS nor its counsel is prejudiced by my conduct. Plaintiffs have acted zealously to represent their clients within the bounds of law. The Plaintiffs have complied with the Court's orders and rules, as well.

WHEREFORE, Plaintiffs request that the motion be denied.

Respectfully submitted,

 */s/ Brian P. Sanford*
Brian Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2025, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.


_/s/  Elizabeth J. Sanford_